# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | |
| STEPHEN JEMAL | : | No. 15-570 |

### MEMORANDUM

**Padova, J.**                                                                                                                                              **April 8, 2020**

Defendant Stephen Jemal has filed an "Amended Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)," arguing, inter alia, that the COVID-19 pandemic has reached the Federal Correctional Institution at Otisville ("FCI-Otisville") where he is incarcerated and that, as a 64-year-old man with a pre-existing medical condition, he is at serious risk of dying in prison if infected. The Government opposes Defendant's Motion on the grounds that he has not exhausted his statutory administrative remedies. For the following reasons, we defer ruling on Defendant's Motion for an additional four days to permit the Bureau of Prisons ("BOP") the opportunity to process and act on Defendant's pending administrative request that the BOP file a motion for compassionate release on his behalf.

### I.    BACKGROUND

We sentenced Defendant, a non-violent first-time offender, on June 18, 2019, to an 18-month term of imprisonment and five years of supervised release following his guilty plea to three counts of bank fraud in violation of 18 U.S.C. § 1344. He began serving his sentence at FCI-Otisville on July 22, 2019. On April 7, 2020, the Bureau of Prisons website reported that, as of 3:00 p.m. that day, two inmates and three staff members at FCI-Otisville had tested positive for the COVID-19 virus. See https://www.bop.gov/coronavirus/ (accessed Apr. 7, 2020).

Although Defendant's projected release date is October 31, 2020, the BOP's

Individualized Reentry Plan for Defendant indicates that, pursuant to the elderly offender component of the First Step Act, Defendant is eligible to be released to home confinement on July 22, 2020. (See Def.'s Ex A at 1, 4.) Defendant contends that he suffers from a pre-existing condition of Chronic Obstructive Pulmonary Disease ("COPD") and in support of that assertion, he submits evidence that, on December 10, 2014, he underwent an x-ray that showed "[h]yperaeration of lungs and flattening of diaphragms . . . suggestive of COPD." (Def.'s Ex. E at 2.) Defendant has also submitted an affidavit from Dr. Brie Williams, a physician in California, who provides general information in support of "any defendant seeking release from custody during the COVID-19 pandemic." (Def.'s Ex. D ¶ 4.) Dr. Williams states that "[b]ecause inmates live in close quarters, there is an extraordinarily high risk of accelerated transmission of COVID-19 within jails and prisons." (Id. ¶ 7.) She further opines that "the risk of coronavirus to incarcerated seniors is high," as is the risk to "individuals with at least one chronic condition." (Id. ¶¶ 8-9.) She recounts that the World Health Organization has warned that "prisons around the world can expect 'huge mortality rates' from Covid-19 unless they take immediate action" and explains that "[j]ails and prisons are fundamentally ill-equipped to handle a pandemic." (Id. ¶ 14, 16.)

Defendant filed his Amended Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) on March 31, 2020. He asks that his sentence be either reduced to time-served or, in the alternative, modified to permit him to serve the remainder of his sentence in home confinement. Shortly before filing his Amended Motion, on March 29,2020, Defendant submitted an administrative relief request to the Warden at FCI-Otisville, requesting that the BOP file a motion for compassionate release on his behalf, and arguing, as he does in his Amended Motion, that extraordinary and compelling circumstances support his request for a sentence modification.

(See Def.'s Ex. B).  After a conference call with counsel for both Defendant and the Government on April 3, 2020, we directed the Government to reach out to the BOP to ascertain the status of Defendant's administrative relief request.  On April 6, 2020, the Government submitted a letter in which it stated that the Warden at FCI-Otisville had received Defendant's request and that "[n]o assurance may be made regarding exactly how much time review will take, as the depth of review varies depending on the circumstances of the inmate even in ordinary times," but that Defendant's request would "be considered with all possible dispatch."  (Docket No. 91.)

**II.     LEGAL STANDARD**

As a general rule, a district court may not modify a defendant's sentence after it has been imposed.  18 U.S.C. § 3582(c); see also Dillon v. United States, 560 U.S. 817, 825 (2010).  However, the First Step Act provides an exception to that rule under the following limited circumstances:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> \*     \*     \*
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).  In a recent case that, like the instant case, involved the risks that the COVID-19 pandemic poses to federal inmates, the United States Court of Appeals for the Third Circuit characterized § 3582(c)(1)(A) as an exhaustion requirement and stated that the requirement

3

presents a "glaring roadblock foreclosing compassionate release" when "the BOP has not had thirty days to consider [the defendant's] request to move for compassionate release on his behalf, nor has [the defendant] administratively exhausted any adverse decision by BOP." United States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020). The Third Circuit went on to say that it:

> [does] not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for [older inmates with pre-existing conditions]. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. See generally Federal Bureau of Prisons, COVID-19 Action Plan (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp. Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance. And given the Attorney General's directive that BOP "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," we anticipate that the exhaustion requirement will be speedily dispatched in cases like this one. Memorandum from Attorney Gen. to Dir., Bureau of Prisons 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/download.

Id.

## III. DISCUSSION

In his Motion, Defendant concedes that he has not satisfied either of the statutory prerequisites for judicial review. He nevertheless argues that he should be excused from satisfying the statutory exhaustion requirements because exhaustion would be futile, emphasizing both the potentially irreparable harm he will suffer if he must wait thirty days for a BOP decision and the BOP's failure to adequately prepare FCI-Otisville for this emerging health crisis. The Government counters that the Third Circuit's decision in Raia makes clear that any request for judicial review is premature and, in fact, "futile," where the defendant has not met the statutory prerequisites.

4

Raia, 2020 WL 1647922, at *2 (stating that remanding the matter to the district court for consideration of defendant's motion for compassionate release would be futile because defendant had not complied with § 3582(c)(1)(A)'s exhaustion requirements).

Given the decision in Raia, we are skeptical that we are statutorily authorized to rule on Defendant's compassionate relief request at this point in time. We are also mindful that the Supreme Court has cautioned that we should "not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). At the same time, we note that Raia does not directly address the question of whether, under certain circumstances, futility can excuse a defendant's failure to exhaust administrative remedies under § 3582(c)(1)(A). The Raia court also appeared to rest its conclusions, at least in part, on information that the federal correctional institution at issue in that case had not had any confirmed COVID-19 positive cases (which is not the situation at FCI-Otisville), as well as on a genuine, but perhaps optimistic, belief that the BOP will "speedily dispatch[]" inmates' compassionate release requests in light of its "shared desire for a safe and healthy prison environment." Raia, 2020 WL 1647922, at *2.

Section 3582(c)(1)(A), at a minimum, expresses Congress's strong and distinct preference for the BOP to be the initial gatekeeper for inmates' compassionate release requests, in recognition of the fact that the BOP "is frequently in the best position to assess, at least in the first instance, a defendant's conditions, the risk presented to the public by his release, and the adequacy of a release plan." United States v. Gross, Crim. A. No. 15-769, 2020 WL 1673244, at *2 (S.D.N.Y. Apr. 6, 2020) (quotation omitted). The BOP is also undoubtedly in the best position to assess any risks that might be posed to an inmate by his prison environment and the COVID-19 virus circulating within it. We must therefore give the BOP a reasonable opportunity to address Defendant's request

5

in the first instance. We are not convinced, however, that we must rigidly adhere to the statutory directive that the BOP be provided up to thirty days to address Defendant's compassionate release request, without considering a futility exception to exhaustion. See, e.g., Wilson v. MVM, Inc., 475 F.3d 166, 175 (3d Cir. 2007) (recognizing a narrow futility exception to certain statutory exhaustion requirements); see also United States v. Zukerman, No. 16 CR. 194 (AT), 2020 WL 1659880, at *4 (S.D.N.Y. Apr. 3, 2020) (holding that defendant's "advanced age and compromised health, combined with the high risk of contracting COVID-19 at Otisville, justify waiver of the exhaustion requirement"); United States v. Perez, No. 17 CR. 513-3 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020) (holding that defendant's "undisputed fragile health, combined with the high risk of contracting COVID-19 in the [detention center] justifies waiver of the exhaustion requirement"). In this regard, we note that, it is highly unlikely that, in drafting § 3582(c)(1)(A)(i), Congress anticipated a fast-moving pandemic of this magnitude that threatens large segments of the prison population and has resulted in an overwhelming tide of compassionate release requests that are straining, if not overwhelming, the BOP's resources, making it difficult to act with the speed that necessity commands. We also note that, in the last week, the number of confirmed positive cases in FCI-Otisville has ballooned from one to five, and we have no reason to believe that the growing public health threat within its walls is now contained.

Taking all of these circumstances into consideration, we will wait four more days – until Sunday, April 12, 2020 – to give the BOP an additional opportunity to act on Defendant's compassionate relief request, which was sent to the Warden ten days ago. If the BOP has not acted on Defendant's request by that time, we will proceed to consider Defendant's Motion, including, preliminarily, his request that we excuse his failure to exhaust based on futility. We encourage Defendant and the Government to supplement their submissions with any additional

legal authority that may guide our resolution of the Motion, as well as any further evidence and argument regarding whether exhaustion is futile, whether extraordinary and compelling reasons warrant a sentence modification and, if a sentence modification is warranted, what an appropriate modification might be.

## IV. CONCLUSION

For the foregoing reasons, we defer ruling on Defendant's Amended Motion pending a decision on his administrative request of the BOP or the end of the day on April 12, 2020, whichever occurs first. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____
John R. Padova, J.